UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDREW TONY BLACKEAGLE,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 3:16-cv-00245-BLW<br><br>MEMORANDUM DECISION AND ORDER |

**INTRODUCTION**

Before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Dkt. 1), the Government's Motion to Stay (Dkt. 3), and the Government's Motion to Dismiss (Dkt. 5). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions shall be decided on the record before this Court without oral argument. For the reasons explained below, the Court will deny the motion to stay and will grant the government's motion to dismiss the petition.

**BACKGROUND**

A.     **Factual Background**

On August 23, 2013, Defendant Andrew Tony Blackeagle pleaded guilty to

assault with a dangerous weapon. The United States Probation Office prepared a Presentence Investigation Report (PSR), which calculated Blackeagle's Total Offense Level as 21. The Total Offense Level would have been 18 but for a three-level enhancement applied under § 4B1.1(a) of the United States Sentencing Guidelines, based on the PSR's conclusion that Blackeagle was a "career offender." *See PSR*, Cr. Dkt. 26[1], ¶ 22. To qualify as a career offender, a defendant must have committed at last two prior drug crimes or "crimes of violence." *See* U.S.S.G. § 4B1.1(a).[2] Here, the PSR concluded that Blackeagle had committed two prior crimes of violence: (1) assault with a deadly weapon; and (2) attempted strangulation. *PSR,* Cr. Dkt. 26, ¶ 22.

A "crime of violence" is defined in Guidelines § 4B1.2 as follows:

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –

  (1) *has as an element the use, attempted use, or threatened use of physical force against the person of another*; or

  (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

---

[1] In this decision, "Cr. Dkt." refers to the Court's docket in the underlying criminal case, *United States v. Blackeagle,* No. 3:13-cr-00043 (D. Idaho).

[2] Section 4B1.1(a) states: "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."

U.S.S.G. § 4B1.2(a) (emphasis added).

The emphasized language – contained in both subsections (a)(1) and (a)(2) – is key to this petition. The emphasized language in subsection (a)(1) has come to be known as the "force" clause, or the "elements" clause. The Supreme Court has clarified that the force mentioned in this section must be "violent force – that is, force capable of causing physical pain or injury to another person." *See Johnson v. United States*, 559 U.S. 133, 140 (2010). Subsection (a)(2) identifies enumerated offenses—burglary of a dwelling, arson, extortion, and offenses involving the use of explosives—and then contains an "otherwise involves" clause (emphasized above). The "otherwise involves" clause is more commonly referred to as the "residual clause." *See Chambers v. United States*, 555 U.S. 122, 124 (2009).

In this case, Blackeagle did not object to the PSR's conclusion that he was a career offender, nor did he ask the Court to make any specific findings regarding the underlying conclusion that his prior two convictions qualified as "crimes of violence." In other words, he did not ask the Court to clarify whether his prior convictions qualified as crimes of violence under any particular clause of Guidelines §4B1.2(a).

At the November 5, 2013 sentencing hearing, the Court adopted the PSR's findings and sentencing calculations, thus concluding that Blackeagle was a career offender under § 4B1.1(a) based on his two prior convictions for "crimes of violence." *See Presentence Investigation Report,* Cr. Dkt. 26, ¶ 22; *Statement of Reasons,* Cr. Dkt. 31, ¶ 1.A. The Court also adopted the advisory Guidelines range set forth in the PSR,

which was 77 to 96 months' imprisonment, corresponding to a Total Offense Level of 21 and a Criminal History Category of VI. *See Statement of Reasons,* Cr. Dkt. 31, ¶ III.

The Court imposed a below-guidelines sentence of 67 months' imprisonment, to be followed by three years of supervised release. *See Jdgmt.,* Cr. Dkt. 32. The Court explained that it "reduced the term of imprisonment by ten months [from 77 months to 67 months] to credit the defendant time in custody that most likely would not be credited to him by the Bureau of Prisons." *Statement of Reasons,* Cr. Dkt. 31, ¶ V.D.

On June 20, 2016, Blackeagle filed the pending § 2255 motion seeking to vacate his sentence in light of United States Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2241 (2015). As explained further below, Blackeagle says that under *Johnson,* he should not have received the three-level career-offender enhancement because one of his prior convictions – attempted strangulation – does not qualify as a "crime of violence" in light of *Johnson.* Thus, according to Blackeagle, his advisory Guidelines range should have been 57 to 71 months of imprisonment (rather than 77 to 96 months), corresponding to a Total Offense Level of 18.

**B.  Legal Background**

In *Johnson*, the Supreme Court addressed a challenge to the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), which provides that a defendant with three prior "violent felony" convictions faces a fifteen-year mandatory-minimum sentence if convicted of violating 18 U.S.C. § 922(g). 18 U.S.C. § 924(e). The ACCA residual clause definition of "violent felony," which encompasses any crime that

"involves conduct that presents a serious potential risk of physical injury to another," is identical to the residual clause of the Guidelines' definition "crime of violence."

The *Johnson* Court held that the residual clause is so vague that it "both denies fair notice to defendants and invites arbitrary enforcement by judges." 135 S. Ct. at 2557. Accordingly, *Johnson* held that an increase to a defendant's sentence under the clause "denies due process of law." In *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016), the Supreme Court held that *Johnson* is retroactive as applied to the ACCA. However, neither the Supreme Court nor the Ninth Circuit has addressed whether *Johnson* is retroactive as to the identical language in the Sentencing Guidelines.

## LEGAL STANDARD

A prisoner in custody under sentence of a federal court, making a collateral attack against the validity of his or her conviction or sentence, must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255 in the court that imposed the sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Section 2255 was intended to alleviate the burden of habeas corpus petitions filed by federal prisoners in the district of confinement by providing an equally broad remedy in the more convenient jurisdiction of the sentencing court. *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Under 28 U.S.C. § 2255, a federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States.

## DISCUSSION

Blackeagle's ultimate argument has two parts:  First, he says that the residual clause in the Career Offender Guidelines – which is identically worded to the residual clause in the ACCA at issue in *Johnson* – is unconstitutionally vague.  Second, he says his prior conviction for attempted strangulation cannot qualify as a crime of violence without relying on the Guidelines' residual clause.  Blackeagle thus concludes that his sentence is illegal and that he should be re-sentenced without the career-offender finding in place.

The Court is not persuaded.  Even assuming Blackeagle is correct on his first argument – that the residual clause in the Guidelines is unconstitutional – Blackeagle's second argument lacks merit because his prior conviction for attempted strangulation qualifies as a crime of violence under the "force" clause of Guidelines § 4B1.1(a).  As a result, Blackeagle was properly designated as a career offender without relying on the residual clause.

Before the Court can address these issues, however, it will first address three preliminary issues raised by the government: (1) whether the Court should stay these proceedings until the Supreme Court decides whether the residual clause in the Guidelines is unconstitutional; (2) whether Blackeagle waived his right to challenge his sentence in a post-conviction proceeding; and (3) whether Blackeagle's claims are procedurally barred.

**1.     Motion to Stay**

On June 27, 2016, the United States Supreme Court granted certiorari in *United States v. Beckles,* 616 Fed. Appx. 415 (11th Cir. 2015), *cert. granted*, 136 S. Ct. 2510 (2016), to address three questions: (1) whether *Johnson* applies retroactively to collateral cases challenging federal sentences enhanced under the residual clause in United States Sentencing Guidelines § 4B1.2(a)(2); (2) whether *Johnson*'s constitutional holding applies to the residual clause in U.S.S.G. § 4B1.2(a)(2), thereby rendering challenges to sentences enhanced under it cognizable on collateral review; and (3) whether mere possession of a sawed-off shotgun, an offense listed as a "crime of violence" only in commentary to U.S.S.G. § 4B1.2, remains a "crime of violence" after Johnson. *See www.scotusblog./cases-files/cases/beckles-v-united-states (last visited Jan. 4, 2017).* The first two questions are at issue in these proceedings. The government therefore asks the Court to stay ruling on Blackeagle's § 2255 motion until the Supreme Court decides *Beckles.*

A Court's power to stay proceedings pending the resolution of another case is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A trial court may, with propriety, find it is efficient for its own docket, and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal.*, 593 F.2d 857, 863 (9th Cir. 1979). In determining whether a stay is appropriate, the court must weigh "the competing interests

which will be affected by the granting or refusal to grant a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citation omitted). The "proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 709 (1997) (citing *Landis*, 299 U.S. at 255). If there is "even a fair possibility" of harm to the opposing party, the moving party "must make out a clear case of hardship or inequity in being required to go forward." *Lockyer*, 398 F.3d at 1112 (citing *Landis*, 299 U.S. at 254). In habeas cases, "special considerations" are implicated "that place unique limits on a district court's authority to stay a case in the interests of judicial economy." *See Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000). If a stay is especially long or its term is indefinite," the Court "require[s] a greater showing to justify it." *Id.* at 1119.

     Blackeagle argues that a stay is not justified because if he is successful in these proceedings, he will be eligible for immediate release from prison. Blackeagle's anticipated release date of November 23, 2017 is now less than a year away. *See* [www.bop.gov.inmatelocator](www.bop.gov.inmatelocator) (last visited Jan. 4, 2017). This release date, which presumably includes good-time credit, is based on the 67-month sentence this Court imposed in 2013. That sentence, in turn, was a below-guidelines sentence. Specifically, as noted above, Blackeagle's guidelines range of 77 to 96 months' imprisonment was based on an adjusted offense level of 21 and a Criminal History Category of VI. If the Court were to accept Blackeagle's argument in these proceedings, his adjusted offense level would be an 18, with a resulting Guidelines range of 57 to 71 months' imprisonment. Of course, this Court's 67-month sentence falls within that range, but

Blackeagle is implicitly arguing that, without the career-offender enhancement, the Court would have sentenced him to 47 months' imprisonment, which is 10 months less than the low end of the recalculated guidelines range.  If that were the case, Blackeagle would be eligible for immediate release from prison.

Under this analysis, there is, in theory at least, a fair possibility that a stay would damage Blackeagle by delaying his release from prison.  Although it would conserve judicial resources to wait for the Supreme Court's decision in *Beckles,* defendants' potential right to an immediate release outweighs considerations of judicial economy.  The Court will therefore deny the government's motion to stay, though it will reserve ruling on whether a stay would be appropriate in cases where defendant's likely release date is after *Beckles* is likely to be decided.  *Cf. United States v. Rodriguez*, No. 13–20405, 2016 WL 4124096, at *1 (E.D. Mich. Aug. 3, 2016) (granting motion to stay where the defendant did not object and the "defendant would be unlikely to receive a sentence that would result in his release before mid-2017").

2. **Waiver**

As part of his plea agreement, Blackeagle waived his right to file a § 2255 motion, except for a claim of ineffective assistance of counsel based upon information not known at the time of sentencing.  *See Plea Agmt.*, Cr. Dkt. 5, ¶ VI(B) at 5-6.  The government thus argues that Blackeagle waived his right to file this petition.  *See Mot.*, Dkt. 5, at 6-8.

Plea agreements are "essentially contracts" and are to be enforced pursuant to their literal terms, construing any ambiguities in the defendant's favor. *United States v.*

*Heredia*, 768 F.3d 1220, 1230 (9th Cir. 2014). "A waiver of appellate rights 'is enforceable if (1) the language of the waiver encompasses the defendant's right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made.'" *United States v. Medina-Carrasco*, 815 F.3d 457, 461 (9th Cir. 2015) (quoting *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005)).

But even if a defendant's waiver meets this criteria, the appeal waiver will not apply if: (1) a defendant's guilty plea failed to comply with Federal Rule of Criminal Procedure 11; (2) the sentencing judge informs a defendant that he or she retains the right to appeal; (3) the sentence does not comport with the terms of the plea agreement; or (4) the sentence violates the law. *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) (collecting cases).

Here, only the last exception – that the sentence violates the law – is potentially applicable. The Ninth Circuit has held that if *Johnson* nullifies the residual clause of the Career Offender Guidelines, sentences rendered pursuant to that clause are likely unconstitutional and would be "illegal," and thus waivers in plea agreements cannot bar collateral attacks on that basis. *United States v. Torres*, 828 F.3d 1113, 1125 (9th Cir. 2016). Accordingly, the Court must determine whether Blackeagle's sentence "violates the law" to determine whether the waiver applies. Ultimately, then, whether the waiver may be enforced, and whether Blackeagle has proved a valid constitutional claim under *Johnson*, collapse into the same inquiry. Because the Court ultimately concludes that Blackeagle's sentence does not violate the Constitution, his waiver is enforceable.

3.  **Procedural Default**

The government also argues that Blackeagle procedurally defaulted on his § 2255 petition. To overcome procedural default, Blackeagle must demonstrate (1) "cause" and (2) "actual prejudice resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982).

Blackeagle may demonstrate "cause" by establishing that "the factual or legal basis for a claim was not reasonably available to counsel" at the time of sentencing. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A constitutional claim is not "reasonably available" if the Supreme Court decision establishing the claim: (1) explicitly overrules one of the Court's precedents; (2) overturns a longstanding and widespread practice to which the Court has not spoken, "but which a near-unanimous body of lower court authority has expressly approved; or (3) disapproves a practice that the Court "arguably has sanctioned in prior cases." *Reed v. Ross*, 468 U.S. 1, 16 (1984).

Here, *Johnson* expressly overruled prior Supreme Court cases that upheld the ACCA's residual cause, including *James v. United States,* 550 U.S. 192 (2007), and *Sykes v. United States,* 564 U.S. 1 (2011). *See Johnson*, 135 S. Ct. at 2563. Thus, before *Johnson*, a vagueness challenge to the residual clause of the ACCA, or, by extension, the Career Offender Guidelines – was foreclosed by *James and Sykes*. Accordingly, Blackeagle has demonstrated cause.

As for prejudice, Blackeagle contends that "the constitutional error he challenges resulted in the Court's calculation of an erroneously high Guidelines range." *Reply,* Dkt.

9, at 22.  The Court is not persuaded.  For the reasons explained below, the Court's calculation of Blackeagle's advisory Guidelines range was correct – notwithstanding the Supreme Court's holding in *Johnson.*  Accordingly, Blackeagle cannot demonstrate actual prejudice and his petition is procedurally defaulted.

4.      **Blackeagle Was Properly Designated as a Career Offender without Resort to the Guidelines' Residual Clause**

A central assumption in Blackeagle's argument is that this Court had no choice but to rely on the Guidelines' residual clause to conclude that Blackeagle was a career offender.  This assumption is key, because the other clauses of the Guidelines' crime-of-violence definition have not been called into question.  That is, although *Johnson* invalidated the ACCA's residual clause, it did "not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the ACCA's definition of a violent felony."  135 S. Ct. at 2563.  Similarly, *Johnson* did not call into question the remainder of the Career Offender Guideline's definition of a crime of violence, including its enumerated offense clause and its elements, or "force," clause.  Thus, if at sentencing, this court did not necessarily rely on the residual clause but could have instead relied on the "force" clause, then Blackeagle is not entitled to the relief he seeks.

As noted above, the Probation Officer did not specify which clause he relied upon to conclude that Blackeagle's prior convictions (assault with a deadly weapon and attempted strangulation) qualified as "crimes of violence."  Neither party requested a more specific finding, and, accordingly, the Court made none.

But this lack of a specific finding ultimately does not matter because Blackeagle's

prior conviction qualifies as a crime of violence under the "force" clause of the Guidelines. For ease of reference, the Court will restate Guidelines section 4B1.2's definition of a crime of violence here:

> (b) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> *(1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or*
>
> *(2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2(a) (emphasis added).

The Court will assume that the second subsection does not apply. Blackeagle's prior conviction – attempted strangulation – is not one of the four enumerated offenses. And following the Supreme Court's decision in *Johnson,* the residual clause of § 4B1.2(a)(2) that reads "*or otherwise involves conduct that presents a serious potential risk of physical injury to another*" may well be unconstitutionally vague. *See Johnson v. United States,* 135 S. Ct. 2551, 2557 (2015) (holding the residual clause of the ACCA to be unconstitutionally vague); *United States v. Spencer*, 724 F.3d 1133, 1138 (9th Cir. 2013) (quoting *United States v. Crews*, 621 F.3d 849, 852 n.4 (9th Cir. 2010) ("The Ninth Circuit makes 'no distinction between the terms 'violent felony' as defined in the ACCA and 'crime of violence' as defined in § 4B1.2(a)(2) of the Sentencing Guidelines for purposes of interpreting the residual clauses.").

So the question is whether attempted strangulation qualifies as a crime of violence under the first subsection – the "force clause." The force clause asks whether the prior conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(a).

A. **The Governing Legal Standard**

The Court employs the three-step categorical approach to determine whether a defendant's prior conviction satisfies the Guidelines' definition of a crime of violence. *See, e.g., Spencer*, 724 F.3d at 1137; *see also Lopez-Valencia v. Lynch*, 798 F.3d 863, 867-68 (9th Cir. 2015).

At step one, the Court compares the elements of the state offense (here, attempted strangulation under Idaho Code § 18-923) to the elements listed in the Guidelines' definition of a crime of violence. *See United States v. Werle*, 815 F.3d 614, 618 (9th Cir. 2016) (interpreting the term "violent felony" under the ACCA); *Taylor v. United States,* 495 U.S. 575, 600-02 (1990). If the elements of the state offense are the same as, or narrower than, the Guidelines' definition of a crime of violence, then the conduct criminalized in the state statute is categorically a crime of violence. *See Descamps v. United States,* 133 S. Ct. 2276, 2281 (2013). If, however, the state statute criminalizes conduct broader than that criminalized in the Guidelines' definition of a crime of violence, then the Court proceeds to step two. *See Lopez-Valencia,* 798 F.3d at 867-68.

At step two, the Court determines whether the over-inclusive state statute is divisible or indivisible. *See id.* A statute is divisible if it lists alternative elements such

that the statute describes separate crimes. *Descamps*, 133 S. Ct. at 2285-86. If the statute is indivisible, the analysis ends "because a conviction under an indivisible, overbroad statute can never serve as a predicate offense." *Lopez-Valencia,* 798 F.3d at 868. If the statute is divisible, the Court proceeds to step three.

At step three, the Court examines judicially noticeable documents to determine the elements of the statute the defendant violated. Then, the Court compares *those* elements match the elements of the general definition of a crime of violence. *Id.*

B. **Choking is a Crime of Violence**

Here, Blackeagle was convicted of attempted strangulation, in violation of Idaho Code § 18-923. This section provides:

> **§ 18-923. Attempted strangulation.**
>
> (1) Any person who willfully and unlawfully chokes or attempts to strangle a household member, or a person with whom he or she has or had a dating relationship, is guilty of a felony punishable by incarceration for up to fifteen (15) years in the state prison.
>
> (2) No injuries are required to prove attempted strangulation.
>
> (3) The prosecution is not required to show that the defendant intended to kill or injure the victim. The only intent required is the intent to choke or attempt to strangle.

Idaho Code § 18-923.

As the first sub-section of this statute explains, there are two ways of committing the offense of "attempted strangulation": (1) willfully and unlawfully choking, and (2) attempting to strangle. *State v. Williston*, 358 P.3d 776, 780 (Idaho Ct. App. 2015). Choking is less culpable than attempting to strangle, because attempting to strangle "by

its very definition, involves an intent to injure or kill." *Id.* at 782. Choking, however, "requires only the general intent to willfully and unlawfully choke the victim, with no specific intent to injure or commit a crime." *Id.* at 781. Thus, "choking an individual generally would entail an intent to at least make the person temporarily uncomfortable or fearful, but it could be done without an intent to inflict a physical injury." *Id.*

Based on these authorities, Blackeagle contends that choking does not require a defendant to use the type of violent physical force that would satisfy the "force" clause in § 4B1.2(a)(1). More specifically, Blackeagle argues that because choking can be committed without intending to cause physical injury, and without actually causing physical injury, this necessarily means the crime of "choking" does not involve the "use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1), as required by the Guidelines' definition of a "crime of violence." Blackeagle relies on the Supreme Court's elaboration on the term "physical force" in *Johnson v. United States*, 559 U.S. 133, 140 (2010) (*Johnson I*). In *Johnson I*, the Supreme Court rejected the government's argument that if a prior conviction involved even the merest touching, the defendant had used the sort of physical force necessary to satisfy the "force clause" of the ACCA. The Supreme Court explained that while mere touching would not qualify as physical force, a slap in the face would suffice:

> Specifying that "physical force" must rise to the level of bodily injury [in a different statutory section] does not suggest that without the qualification "physical force" would consist of the merest touch. It might consist, for example, of only that degree of force necessary to inflict pain – a slap in the face, for example.

*Id.* at 143.

This language guides us here. Surely, if a slap in the face qualifies as violent physical force capable of producing injury, then choking a person qualifies as well. To be convicted of "choking" under Idaho Code § 18-923 the defendant must "compress the throat [of another] with strong external pressure" so as "to make normal breathing difficult or impossible . . . ." *State v. Laramore*, 179 P.3d 1084, 1088 (Ct. App. Idaho 2007) (quoting Webster's Third New International Dictionary at 396). Thus, notwithstanding any lack of intent to injure the victim, or the failure to actually injure the victim, the force that must be used to be convicted of choking fits the definition of employing "violent force – that is, force *capable of* causing physical pain or injury to another person." *Johnson v. United States,* 159 U.S. 133, 140 (2010) (emphasis added).

To recap, then, because choking under Idaho Code § 18-923 is properly categorized as a "crime of violence" under the Guidelines, Blackeagle was correctly designated as a career offender, and his Total Offense Level was correctly calculated as a 21. There is, therefore, no error, and no need to re-sentence. The Court will therefore dismiss Blackeagle's § 2255 motion.

**ORDER**

**IT IS ORDERED that:**

1. The Government's Motion to Stay (Dkt. 3) is **DENIED.**

2. The Government's Motion to Dismiss (Dkt. 5) is **GRANTED** and Defendant's Motion to Vacate under 28 U.S.C. § 2255 (Dkt. 1) is **DISMISSED.**

3. Defendant's Motion for Leave to File Excess Pages (Dkt. 8) is retroactively **GRANTED.**

4. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: February 1, 2017

B. Lynn Winmill
Chief Judge
United States District Court